FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2026 NOV 17 PM 12:46

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

CONNIE SEASTEDT,

Defendant.

8:26CR198

PLEA AGREEMENT

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Lesley A. Woods, United States Attorney and William W. Cheatham, Assistant United States Attorney, and defendant, Connie Seastedt, and Daniel Stockmann, counsel for defendant, as follows:

**I**

**THE PLEA**

A. CHARGES, FORFEITURE ALLEGATION & RESTITUION AGREEMENT

Defendant agrees to plead guilty to the Information and waive formal Indictment. Counts I and II charge violations of Title 18, United States Code, Section 1343. Defendant further admits the forfeiture allegation(s) as set forth in the Information. The parties agree the property to be forfeited is:

a. Real property located at 19001 Olive Street, Omaha, NE 68136, also described as: Lot 7 Sugar Creek Replat 2 2957-17-2-609999-000-0007

b. A sum of money equal to the total amount of proceeds traceable to such offenses for which the Defendant is convicted at least in the amount of $525,879.05.

B. In exchange for the defendant's plea of guilty as indicated above, the United States agrees as follows:

1. The United States agrees that the defendant will not be federally prosecuted in the District of Nebraska for crimes as disclosed by the discovery material delivered to the defendant's attorney as of the date this agreement is signed by all parties, other than as

set forth in paragraph A, above. This agreement not to prosecute the defendant for specific crimes does not prevent any prosecuting authority from prosecuting the defendant for any other crime, or for any crime involving physical injury or death.

2. The United States Attorney's Office for the District of Nebraska agrees to request that the appropriate agency evaluate a petition for remission of the net proceeds forfeited in connection with this case, in accordance with relevant regulations under 28 C.F.R. §9.1 et seq., to determine whether the petition should be granted and the proceeds paid to identified victim(s). If remission is granted, the parties agree the proceeds paid to the victim(s) would be credited against any restitution ordered by the Court in this case.

II

## NATURE OF THE OFFENSE

A. ELEMENTS EXPLAINED.

Defendant understands that the offenses – Counts I and II of an Information– to which defendant is pleading guilty have the following elements:

1. Defendant voluntarily and intentionally devised or made up a scheme to defraud another out of money, property or property rights or devised or participated in a scheme to obtain money, property or property rights by means of materially false representations or promises;
2. Defendant did so with the intent to defraud; and
3. Defendant used, or caused to be used, an interstate wire communication in furtherance of or in attempt to carry out some essential step in the scheme.

B. ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

1. Between June 2024 and August 2026 Defendant Connie Seastedt operated a travel agency "Captivating Travels by Connie" out of her home in Omaha, Nebraska.

2. As part of her business, Seastedt contracted with Victim Company 1, a national American travel agency. A branch of Victim Company 1 is located in Omaha, Nebraska. Seastedt is an independent contractor affiliated with Victim Company 1.

3. As part of her business, Seastedt had access to customer names, addresses, and credit cards used to book travel experiences.

4. Between June 2024 and August 2026 Seastedt used her access to customer data and credit card information to devise a Ponzi-like scheme whereby certain customer's credit or debit cards were charged to pay for the travel of another customer.

5. The scheme entailed Seastedt using Customer B's credit card to pay for Customer A's travel because by the time Customer A booked travel through Seastedt, Seastedt had already used Customer A's money to pay for a separate customer's travel.

6. Another customer and victim of the Scheme is Victim Company 2, an Illinois-based company.

7. Victim Company 2 employed Seastedt's services to book travel for their employees. Seastedt fraudulently used an American Express card belonging to Victim Company 2 to book travel for her customers and ultimately defrauded Victim Company 2 out of approximately $160,252.75.

8. The entire Scheme affected at least 107 customers and 2 businesses.

9. During this same 26-month period and as part of the scheme, Seastedt used at least 9 different credit cards belonging to her customers to book personal travel for herself and her daughter to wit: a European vacation.

10. Seastedt used the cards listing her name as the cardholder but used the actual card holder's address so as to avoid detection. Further, the charges made would correspond with amounts the customer anticipated in order to avoid discovery by the victim customers whose cards were being used.

11. The Scheme came to light beginning in or about June 2024 when Victim Company 1 noticed irregular credit card chargebacks from the victim customers. The chargebacks would then fall onto Victim Company 1.

12. The chargebacks continued into the fall of 2024 and went into the spring of 2025. Victim Company 1 confronted Seastedt about the chargeback issues and cut ties with her in the spring of 2025.

13. As a result of the chargebacks, Seastedt ultimately defrauded Victim Company 1 out of approximately $293,999.39. The fraud occurred due to the chargebacks which resulted in Victim Company 1 having to incur the cost.

14. In furtherance of the Scheme, on or about April 23, 2025, Seastedt transmitted or caused to be transmitted a wire communication in interstate commerce. Specifically, Seastedt used a Credit Union 1 debit card belonging to a customer to book a vacation to Europe through Internet-based Travel Service 1 and fraudulently charged the debit card in the amount of approximately $3,255.58.

15. The $3,255.58 charge should have paid for travel to Mexico for a vacation for Victims to whom the card jointly belonged. Instead, the charge went to Seastedt's vacation. Seastedt would charge the card as the Victims intended however in reality the travel Victims thought they paid for had not actually been booked.

16. Internet-based Travel Service 1 is located in Milwaukee, Wisconsin. Credit Union 1 is located in Springfield, Missouri.

17. Credit Union 1 uses Mastercard and FISERV servers to process their transactions. A FISERV server located in Lewisville, Texas processed this transaction. Seastedt initiated the transaction from her home in Omaha, Nebraska.

18. In furtherance of the Scheme, on or about April 11, 2026, Seastedt used a Credit Card Company 1 credit card belonging to a customer to book travel through Internet-based Travel Service 2 for a different customer of the ponzi scheme and fraudulently charged the credit card in the amount of approximately $10,653.

19. Seastedt made this charge to book travel for customers of her travel agency and not employees of Victim Company 1 thus furthering the scheme whereby Seastedt would use the money of one customer to pay for the travel of another customer.

20. Internet-based Travel Service 2 is located in Westlake Village, California. Credit Card Company 1 processes their transactions via servers located in Phoenix, Arizona. Seastedt initiated the transaction from her home in Omaha, Nebraska.

21. As a result of this scheme, Seastedt caused a loss of at least $525,879.05.

22. Finally, Defendant utilized proceeds ultimately derived from the fraud scheme to make mortgage payments on her residence, which is: Real property located at 19001 Olive Street, Omaha, NE 68136, also described as: Lot 7 Sugar Creek Replat 2 2957-17-2-609999-000-0007. Defendant waives any claims and rights she has to her interest in the real property and agrees it can be forfeited.

## III

## PENALTIES

A. COUNT I. Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A maximum 20 years in prison; and
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not more than three years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

B. COUNT II. Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A maximum 20 years in prison; and
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not more than three years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5. Possible ineligibility for certain Federal benefits.

## IV

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## V

## SENTENCING ISSUES

A. SENTENCING AGREEMENTS.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable). Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

Except as set forth herein, the parties have no agreement concerning any other offense level enhancements or reductions within the United States Sentencing Guidelines.

1. Base Offense Level: The parties agree that a base offense level of 7 applies pursuant to U.S.S.G. § 2B1.1(a)(1).

2. Loss: The parties agree that the defendant should be held responsible for at least $525,879.05 in loss.

3. 10 or More Victims: The parties agree that the offense involved 10 or more victims and, as a result, a 2-level increase applies pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i).

4. Acceptance of Responsibility: the defendant is found to be entitled to an offense level reduction under U.S.S.G. 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

5. Restitution: Defendant agrees to the following regarding Restitution:

   a. The amount of restitution ordered by the Court shall include all relevant conduct, including, but not limited to, all charged and uncharged criminal conduct alleged in the Information, all verifiable victim customers and companies and is not limited to the counts of conviction.

   b. The parties do not have an agreement on the amount of restitution Defendant shall pay. The specific amount will determined by the Court at sentencing based on all relevant conduct and all evidence then available.

   c. Restitution payment(s) shall be made payable to the "U.S. District Court Clerk" who will subsequently disburse Defendant's restitution payments to victim(s) for losses to be determined.

d. Court imposed monetary penalties are due immediately and subject to immediate enforcement by the United States. 18 U.S.C. § 3613.

e. Any Court ordered schedule for restitution payments is merely a minimum payment obligation and does not limit the methods by which the United States may immediately enforce the judgment in full, including but not limited to enrollment in the Treasury Offset Program (TOP) (see 26 U.S.C. § 6402(d); 31 U.S.C. §3720A; 31 U.S.C. § 3716) and garnishment of available funds, wages, or assets (see 18 U.S.C. §§3613, 3664(m)).

f. If incarcerated, Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a payment schedule.

g. Defendant will provide all of defendant's financial information to the United States and the Probation Officer, and agrees, if requested, to participate in a pre-sentencing debtor exam. Defendant will fully and truthfully disclose all assets and property in which Defendant has any interest, or over which Defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party.

h. At the request of the U.S. Attorney's Office (USAO), Financial Litigation Program (FLP), Defendant will promptly execute and return a fully completed and executed Financial Disclosure statement under oath, a Tax Information Authorization Form 8821, and a Request for Transcript of Tax Return Form 4506-T. Defendant also agrees to provide the USAO FLP copies of financial information that Defendant submitted to the U.S. Probation Office.

i. Defendant authorizes the USAO FLP to obtain Credit Reports concerning Defendant to enable the USAO to evaluate Defendant's ability to satisfy any financial obligations and monetary penalties imposed as part of the sentence, and will execute any Release for such information upon request.

j. Defendant understands that compliance with USAO requests for financial information will be taken into account when the United States makes a recommendation to the Court regarding Defendant's acceptance of responsibility at sentencing. Defendant's failure to timely and accurately complete and sign the

financial statement and any update thereto, may, in addition to any other penalty or remedy, indicate a failure to accept responsibility.

B. ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the United States will not recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

**The parties further agree the defendant will make no "blanket" objections to the criminal history calculation (specific objections based on stated grounds are permitted). Objections to criminal history on the basis that the defendant was not the person who was convicted of the offense(s) described in the presentence investigation report or on the basis that the defendant was not represented by counsel in connection with such conviction(s), if determined to be unfounded, are evidence the defendant has not accepted responsibility and the parties agree no credit for acceptance of responsibility should be given.**

C. ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553(a), and that the United States will oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above.

D. CRIMINAL HISTORY.

The parties have no agreement concerning the defendant's Criminal History Category, except that if defendant is determined to be a Career Offender, the parties agree that the defendant is automatically a Criminal History Category VI pursuant to U.S.S.G. § 4B1.1(b).

E. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report and may be disclosed to the court for purposes of sentencing.

**VI**

**DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK**

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

(a) As provided in Section I above, (if this is a conditional guilty plea); and

(b) A claim of ineffective assistance of counsel.

(c) A right to file a motion under Section 3582(c)(1)(A);

1. the general right to file a compassionate release motion;
2. the right to file a second or successive such motion; or
3. the right to appeal the denial of a compassionate release.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

(a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII
## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII
## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs the agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## IX

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## X

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it (or that it has been

read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA,
Plaintiff

LESLEY A. WOODS
United States Attorney
District of Nebraska

11/17/2026
Date

#22669
WILLIAM W. CHEATHAM
ASSISTANT U.S. ATTORNEY

11/10/26
Date

CONNIE SEASTEDT
DEFENDANT

11/10/26
Date

DANIEL STOCKMANN
COUNSEL FOR DEFENDANT